Filed 4/1/14  P. v. Tirado CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARK ANTHONY TIRADO,<br><br>    Defendant and Appellant. | B245769<br><br>(Los Angeles County<br>Super. Ct. No. KA096084) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed as modified.

Marilyn Drath, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Kimberley J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an amended information, appellant Mark Anthony Tirado was charged with two counts of making criminal threats (Pen. Code, § 422)[1] (counts 1 & 2); one count of cruelty to a child (§ 273a, subd. (b)) (count 4); one count of corporal injury to a spouse (§ 273.5, subd. (a)) (count 5); and three counts of assault with a deadly weapon (§ 245, subd. (a)(1)) (counts 6, 7, & 8). It was further alleged as to all counts that appellant suffered one prior "strike" conviction (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)) and one serious felony conviction (§ 667, subd. (a)(1)).

The jury found appellant guilty of counts 1, 4 and 5, and acquitted him of all other counts. The trial court found that appellant had suffered the prior convictions. Using count 5 as the base count, the trial court sentenced appellant to a total state prison term of 12 years four months.[2] Appellant was ordered to pay a $400 domestic violence fee pursuant to section 1203.097, subd. (a)(5).

Appellant contends that the trial court committed reversible error by failing to instruct the jury sua sponte on the lesser included offense of misdemeanor battery. We disagree. We strike the domestic violence fee and otherwise affirm the judgment.

## FACTS

**Prosecution Case**

This case involves the week between November 5 and 12, 2011. During this time period, appellant lived with his wife, Stephanie Bernadette Tirado (Stephanie), their four children, her son Robert S., and five grandchildren in El Monte, California. During these seven days, appellant's behavior was abusive and violent towards Stephanie and the children. He was "acting strangely" and Stephanie believed he might be under the influence of drugs. Several times she tried to leave the house with the children, but each

---

[1]     All statutory references are to the Penal Code unless otherwise indicated.

[2]     The sentence consisted of 11 years on the base count, which was composed of the midterm of three years doubled to six years for the prior strike plus five years for the prior serious felony conviction. The sentence on count 1 consisted of one-third the midterm of eight months doubled to 16 months for the prior strike, to run consecutively to the sentence imposed on count 5. As to count 4, the trial court imposed a term of six months in county jail to run concurrently with the other sentences.

time appellant "would go out in front of the door and say we weren't going nowhere." Stephanie called the police several times asking for help due to appellant's strange behavior. She did not report any abuse or threats because she was scared. At some point during this time period, the police took appellant to a psychiatric hospital, but Stephanie was called and told to pick him up because he was fine.

Some time in the early morning hours on or about November 9 or 10, 2011, while Stephanie was asleep in the bed she shared with appellant, appellant "socked" her in the face, leaving her dazed. The strike was "hard" and left Stephanie's face swollen with a welt. Stephanie started crying and the couple's youngest daughter, who was also sleeping in the bed, started screaming, "No, no." Appellant locked the deadbolt on the bedroom door, and said that he was going to kill Stephanie. She believed him and was scared. Appellant laughed. The children started banging on the door and appellant eventually unlocked the door. After the children rushed in, Stephanie started to guide them out of the room when appellant grabbed her by the hair and pulled her down. She managed to escape his grasp. As Stephanie headed out of the room, appellant grabbed her arm, causing visible bruising. She and the children slept downstairs the rest of the night.

After the children went to school, appellant continued his threats to kill Stephanie while holding a knife. She called the police several times that day, but did not report the threats or physical abuse because she was "too scared" appellant would kill her or the children, or have someone else kill them.

On or about November 10, 2011, appellant slapped his granddaughter, April R., in the face, grabbed her neck and pushed her down the stairs. The slap left a red mark on her face. April R. began crying. When Stephanie tried to intervene, appellant pushed Stephanie to the ground, pulled her hair, kicked her, and gave her a black eye.

On November 12, 2011, Stephanie called the police because she wanted appellant to leave the house. The responding officers were eventually able to talk appellant into leaving and helped him gather some of his belongings. A few minutes after the police left, appellant returned to the house. From outside the locked house, appellant threatened

3

to kill Stephanie again. Then he picked up a wooden chair and threw it through a window, shattering the glass. Small bits of glass struck Stephanie and her son Robert S., but no one was injured. Appellant left immediately.

The police returned. Stephanie appeared more frightened to the officers than she had earlier and Robert S. was "teary" and "shaking." Stephanie did not show the officers her injuries from being previously struck by appellant because they were no longer visible. While the police were still present, appellant called Stephanie on her cell phone and stated, "I am going to kill you bitch. I am going to chop you up, and I am going to put you in a bag, and I am going to give you to your kids." Appellant was arrested later that night at his mother's house in Whittier.

**Defense Case**

Appellant testified that during the relevant time period he was going through financial and mental problems, hearing voices, hallucinating, and using PCP. He remembered talking to police officers and being asked to leave his house. He drove his truck around the block and then returned to the house, where he threw a chair through the window out of frustration. He denied threatening to kill Stephanie, punching her while she slept, or ever being violent. Appellant admitted that he suffered a robbery conviction in 1993, and a conviction for battery on a spouse/cohabitant/child's parent in 1997.

Forensic psychologist Dr. Haig Kojian interviewed appellant prior to trial. Appellant reported having struggled with depression for "some time," but denied having a history of mental health or emotional problems or visual or auditory hallucinations. Appellant also denied having any history of inpatient or outpatient mental health treatment prior to November 2011. A review of appellant's medical records, however, showed that appellant's representations were inconsistent with his actual medical history, and "clearly showed that he did have incidences where he was admitted to the psychiatric hospital" in the past.

4

Appellant was diagnosed with major depression in January 2010, and was prescribed the antidepressant, Paxil. Appellant told Dr. Kojian that he stopped taking Paxil in November 2011, and used PCP instead. Appellant reported to Dr. Kojian that during the time of the incidents, he was having hallucinations. Dr. Kojian testified that PCP use can "mimic a lot of the mental symptoms of the psychosis schizophrenia, but it also [can cause] mood instability, primarily depression." Some of the symptoms include delusions, visual and auditory hallucinations, irrationality and mood instability that could include mood swings where the user "could be calm then agitated or excited."

A review of appellant's medical records in November 2011 showed that appellant was released from the hospital after two days. According to Dr. Kojian, appellant would not have been released if he had been a danger to himself or others.

## DISCUSSION

### I. No Instructional Error

Appellant contends that the trial court committed reversible error by failing to instruct the jury on misdemeanor battery (§ 243, subd. (e)(1)) as a lesser included offense of corporal injury to a spouse or cohabitant (§ 273.5, subd. (a)) (count 5) because "there was so little evidence of a corporal injury in this case that the court had a sua sponte duty to instruct the jury with the lesser included offense." We disagree.

#### A. Applicable Law

Section 273.5 provides that any person who willfully inflicts upon a spouse "corporal injury resulting in a traumatic condition, is guilty of a felony." (§ 273.5, subd. (a).) Traumatic condition is defined as "a condition of the body, such as a wound or external or internal injury whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (c).) A bruise is a traumatic condition. (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085.)

"A battery is any willful and unlawful use of force or violence upon the person of another." (§ 242.) Appellant is correct that battery is a lesser included offense of inflicting corporal injury on a spouse. (§ 243, subd. (e)(1); *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1457 (*Hamlin*).)

5

"The trial court must instruct sua sponte on 'lesser included offenses if the evidence 'raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense.'" (*Hamlin*, *supra*, 170 Cal.App.4th at p. 1456, quoting *People v. Lopez* (1998) 19 Cal.4th 282, 287–288.) Plainly stated, "[t]he trial court must instruct on lesser offenses necessarily included in the charged offense if there is substantial evidence the defendant is guilty *only* of the lesser." (*People v. Kraft* (2000) 23 Cal.4th 978, 1063, italics added; *People v. DePriest* (2007) 42 Cal.4th 1, 50 [instructions on lesser included offense "are required only where there is 'substantial evidence' from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense"]; *People v. Memro* (1995) 11 Cal.4th 786, 871.) Thus, "if there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged, such instructions shall not be given. [Citations.]" (*People v. Kraft, supra*, 23 Cal.4th at pp. 1063–1064.)

We review de novo whether the trial court erred in failing to instruct on a lesser included offense. (*People v. Cook* (2006) 39 Cal.4th 566, 596.)

### B. Analysis

The trial court had no sua sponte duty to instruct the jury on misdemeanor battery because there was no question that all of the elements of the charged offense were present. The amended information charged appellant with committing the crime of inflicting corporal injury on his spouse "[o]n or between October 1, 2011, through November 12, 2011." Thus, as the People note, in order to convict appellant of this offense, the jury simply had to find that at some point during the relevant time frame appellant willfully inflicted bodily injury upon Stephanie that resulted in a traumatic condition.

For each incident in which appellant battered Stephanie, the jury heard testimony that physical injury resulted. For example, Stephanie testified that on or about November 9 or 10, 2011, appellant punched her "hard" in the face while she was sleeping, and the impact left a welt. After Stephanie got up from the bed and tried to

6

leave the room with the children, appellant grabbed her arm, causing visible bruising. On another occasion when Stephanie tried to intervene while appellant slapped and grabbed their granddaughter, appellant pushed Stephanie to the ground, pulled her hair, kicked her, and gave her a black eye. For each incident, there was uncontroverted evidence of a traumatic condition. Accordingly, the evidence supported a conviction of spousal abuse, and not simply spousal battery.

Appellant attempts to avoid this outcome by pointing out that Stephanie did not seek medical treatment, show her injuries to the police, or report appellant's abusive behavior. But section 273.5 does not require a victim to take such actions. Rather, it requires only that the defendant willfully used physical force upon a spouse that resulted in a traumatic condition, i.e., a wound "whether of a minor or serious nature." (§ 273.5, subd. (c).) The evidence established these elements.

## II. Domestic Violence Fee

Appellant contends, and the People agree, that the trial court erroneously imposed a $400 domestic violence fee under section 1203.097. This section provides that, "If a person is granted probation . . . the terms of the probation shall include all of the following: [¶] . . . [¶] (5) A minimum payment by the defendant of four hundred dollars ($400) . . . ." (§ 1203.097, subd. (a).) Thus, by its terms, section 1203.097 only applies when probation is granted. Because appellant was denied probation and sentenced to a prison term, the domestic violence fee must be stricken.

7

## DISPOSITION

The domestic violence fee of $400 is stricken, and the trial court is directed to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                     ASHMANN-GERST


We concur:


_____, P. J.
    BOREN


_____, J.[*]
    FERNS

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.